Gerard F. Re v. Commissioner. Tillie V. Re v. Commissioner. Jerry A. Re v. Commissioner.
Re v. Commissioner
Docket Nos. 43704-43706.
United States Tax Court
T.C. Memo 1955-206; 1955 Tax Ct. Memo LEXIS 134; 14 T.C.M. (CCH) 828; T.C.M. (RIA) 55206; July 22, 1955
*134 Peter Guy Evans, Esq., 95 Liberty Street, New York, N. Y., for the petitioners. Richard G. Maloney, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined deficiencies in income tax for the year 1945 in the amount of $8,490.98 against Gerard F. Re, petitioner in No. 43704, in the amount of $146.98 against Tillie V. Re, petitioner in No. 43705, and in the amount of $48,683.07 against Jerry A. Re, petitioner in No. 43706. Jerry and Tillie are husband and wife, and Gerard is their son. As a result of various concessions made by the parties a number of the issues raised by the pleadings are no longer in controversy. Two principal issues remain for adjudication. 1. Jerry purchased a farm in Harriman, New York, during the summer of 1945. Jerry and Gerard contended that they operated the farm as a partnership and that each of them is entitled to an allocable share of deductions for expenditures alleged to have been made by the partnership in the aggregate amount of $9,500 for "farm wages, salaries, subsistence, materials, supplies, repairs, etc." At the trial evidence was presented as to expenditures in support *135 of this item. Such evidence failed to disclose expenditures in the full amount of $9,500, nor was it entirely clear that all the expenditures in question represented deductible expenses. However, we do not find it necessary to determine the amount of such expenditures or to rule upon their deductibility for the following reason: no partnership return whatever was filed by Jerry and Gerard for the year 1945 with respect to the operation of the farm; no income from the farm appears to have been reported, although the evidence suggests that some income was received; and accordingly we are left wholly in the dark as to what net loss, if any, resulted from the operation of the alleged partnership. Conceivably, there may not have been any net loss. The mere fact that a partnership has deductions does not mean that such deductions are allocated automatically to the partners. Under our tax law a partnership return must be filed in which both the income and deductions of the enterprise are set forth, so that net income or net loss may be determined, which is then allocated to the members of the partnership. We have no way of knowing on the record before us whether the operations of the alleged *136 farm partnership for 1945 resulted in net gain or net loss. Obviously, if there was a net gain, any allowable deductions would already be taken into account in computing such gain and could not again be allowed as deductions to the individual partners; and if there was net loss then such deductions would similarly be taken into account in computing the net loss which would be allocable to the partners. Since the record furnishes us with no basis whatever for determining whether there was any net loss to the alleged partnership and since the burden of proving their individual right to the deductions in question rests upon the petitioners, this issue must be decided against them for failure of proof. 2. Jerry and Gerard were partners during 1945 in the brokerage firm of Re & Re, specializing in securities listed on the New York Curb Exchange, as it was then known. Each alleges in his amended petition that the Commissioner erred in disallowing or in failing to allow certain deductions with respect to a number of expenditures said to have been made by the partnership. The items presently in dispute are identical for both petitioners. (i) Petitioners challenge the Commissioner's refusal *137 to allow as a deduction from the partnership gross income the sum of $1,972 claimed as office expenses at 10 Downing Street, New York, New York, as follows: Telephone
$ 660.00
Rent
672.00
Utilities
120.00
Cleaning and Service
520.00
$1,972.00 The Commissioner denies that the premises at 10 Downing Street were used as an office. Although there is some basis in the record for the Commissioner's position, we are satisfied on all the evidence that the premises at 10 Downing Street were rented and used by the partnership as an office, that the expenses claimed were in fact incurred, that they represent ordinary and necessary expenses in the conduct of the partnership business, and that they are deductible. (ii) Petitioners allege error in the Commissioner's disallowance of an item of $810 claimed as a deduction by the partnership for traveling expenses. This item involves three trips from New York to Baltimore by Jerry (accompanied by two others on one trip) to induce the Noxzema Company to seek listing on the New York Curb Exchange, with the reasonable expectation that Re & Re would be the specialists in that stock if it were listed. Also included in this item *138 was the expense of entertaining an officer of the Noxzema Company in this connection upon a visit to New York by such officer. No records were produced to substantiate the amounts alleged to have been expended, and they appear to us to have been inflated. In such circumstances, this Court has been instructed in (C.A. 2), to make as close an approximation as it can, "bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making". We find as a fact and hold that the partnership incurred deductible expenses in 1945 in connection with this item in the amount of $350. (iii) Petitioners allege that the Commissioner erred in disallowing as a deduction from the partnership gross income the sum of $1,119.40 claimed as a deduction for business expenses paid to the New York Athletic Club. Here, too, no records were presented, and it is plain from the evidence that at least a portion of the amount involved represented use of the facilities of the New York Athletic Club by Jerry for his own purposes, wholly unrelated to business. We are satisfied, however, that the Club was used by Jerry in some measure in connection *139 with the business of the partnership, and, applying the Cohan case, we hold and find as a fact that $300 of the expenses claimed in connection with this item represent deductible expenses incurred by the partnership in 1945. (iv) Petitioners contest the Commissioner's disallowance of a deduction of an item of $3,323.27 from the partnership gross income, claimed as entertainment expenses. Evidence with respect to this item disclosed that the partnership made various gifts of turkeys, cigars, and liquor at Thanksgiving and Christmas to customers. We are satisfied that some such gifts were made and that they are deductible as being related to the business of the partnership. However, no record or satisfactory evidence was presented as to the amount of such gifts, and even the figures estimated by Jerry as a witness were substantially below the amount claimed. Moreover, his testimony was marked by generality and vagueness. Applying the Cohan case, we find as a fact and hold that the partnership made deductible expenditures in 1945 in connection with this item in the amount of $800. (v) Petitioners contend that the Commissioner erred in failing to allow a $1,200 deduction from partnership *140 gross income for telephone calls with respect to the brokerage business alleged to have been made at the Harriman farm. The testimony as to this item was very unsatisfactory. No records were presented. Jerry estimated such calls as amounting to about $100 a month. However, the farm was not acquired until at least towards the end of the summer of 1945, the tax year involved; and Jerry's attempt to explain the discrepancy was unconvincing. He testified that the $100 a month included not only phone calls made at the Harriman farm, but also those made at a summer cottage in Monroe, New York, which he owned prior to purchasing the farm. The cottage, however, was not suitable for winter occupancy, and we are left in considerable doubt whether phone calls were made over the entire year 1945 from Monroe or Harriman, as testified by Jerry. Moreover, the proof was not at all convincing that such calls did not include personal as well as business calls. We think that some business calls were made, but in view of the nature of the evidence, we cannot approve a deduction in the amount claimed or in any amount close thereto. Applying the Cohan rule, we find as a fact and hold that the partnership *141 incurred deductible business expenses in 1945 in connection with this item in the amount of $250. (vi) Petitioners seek a deduction of $1,500 from partnership gross income "for business luncheons and entertainment." The testimony with respect to this item was that Jerry would take a business associate or customer to lunch once or twice a week at the Curb Exchange restaurant. The evidence persuades us that the amount claimed is inflated. Moreover, it includes the cost of Jerry's luncheon as well as the cost of his guest's lunches. Certainly, the normal cost of his own meals cannot be taken as a business expense. Cf. . Applying the rule of the Cohan case, we find as a fact and hold that the partnership incurred deductible business expenses in 1945 in connection with this item in the amount of $250. (vii) Petitioners contest the Commissioner's failure to allow $880an deduction from the partnership gross income "for business telephone expenses incurred at the New York Curb Exchange." We are satisfied on the evidence that some business calls were made on behalf of the partnership at the New York Curb Exchange. However, no records were presented, *142 and the evidence as to the amounts was vague. We find as a fact and hold that the partnership made deductible business expenditures in 1945 in connection with this item in the amount of $500. (viii) Petitioners seek a deduction of $4,500 from partnership gross income "for ordinary and necessary business entertainment expenses." The evidence with respect to this item related to dinners, night clubs, shows, theater tickets, baseball tickets, and the like. No records were presented. Jerry's testimony as to the amounts expended was vague, general, and unconvincing, and it is by no means clear how much of the expenditures actually incurred had a proximate relationship to the partnership business. We think that some part of these expenditures represented proper business deductions, but in view of the state of the record, the situation is one that particularly calls for accepting the suggestion in the Cohan case to bear heavily upon the petitioners. We find as a fact and hold that the partnership incurred deductible business expenses in 1945 in connection with this item in the amount of $500. (ix) The final item in controversy is a claimed deduction of $1,300 from partnership gross income *143 for "business, traveling and entertainment expenses". Jerry testified that he took a two weeks pleasure trip to Hot Springs, Arkansas, with one Herbert J. Higgins (who represented the partnership's largest account), and that Jerry paid all the expenses amounting to "about $1,000." Higgins did not appear as a witness, and the evidence suggests that such trip, paid for by the partnership, would have been contrary to the rules of the Curb Exchange. Jerry testified, unconvincingly, that there had been an oral waiver of these rules for him. We cannot conclude that the expense of this pleasure trip was an ordinary and necessary business expense of the partnership. There was also testimony by Jerry that the partnership sent flowers to the wives of brokers on anniversaries or other similar occasions. No records were presented, and he estimated the expenses roughly at $300, $400, or $500. We find as a fact and hold that the partnership incurred deductible business expenses in 1945 in connection with this item in the amount of $150. Decisions will be entered under Rule 50.